on the next case, which is Lufthansa v. Thales Avionics. May it please the Court, Lawrence Rosenberg for Lufthansa Technik. I would like to reserve three minutes for rebuttal with the Court's permission. Okay. Lufthansa brought this Section 1782 discovery proceeding to seek damages information against Astronix, a patent infringer, and Thales, its major customer and also an infringer. The Magistrate Judge granted the discovery, and that ruling is not at issue here. However, the Courts below legally erred in three independent respects in failing to compel Thales to produce complete and accurate information. First, they refused to compel Thales to produce sales and purchase information that was complete and accurate when the information produced was significantly defective and completely inaccurate. Secondly, they erred in refusing Thales, in refusing to compel Thales to produce any customer contracts, notwithstanding uncontradicted evidence of foreign law in the record that those contracts were highly relevant. And third, they legally erred in refusing to compel Thales to produce any witnesses as to certain of the Rule 30b-6 topics to which the parties agreed, and in refusing to compel Thales to provide adequately prepared witnesses for the rest of the topics. This Court should reverse. I would just like to note at the outset that while orders such as this are reviewed for abuse of discretion, the standard of review here should be de novo because there were no fact findings, credibility determinations, or other disputes of material fact that the courts below weighed. Can I get some clarification about what was going on here? It seemed to me that you came in with a broad request, and then there was a lot of discussion about things that were happening in Germany very quickly, and you needed to get some materials to respond on damages in the German court. At some point, it appeared that there was a diminution in the emergency nature of the case, and I didn't see where that happened or how that was presented to the judge. Can you explain to me how that was clarified that it wasn't an emergency anymore? Yeah, sure, Your Honor. The original hearing, the August, I believe, 14th, 2019 hearing, was before a hearing that was going to take place in Germany less than a month later. And so we came in and we said we want a two-stage process. First, Hollis, please produce everything you can in the next two weeks. Give us what you can give us by the end of August, and give us a quick Rule 30b-6 deposition at that point so we can try to use this stuff in Germany. And then secondly, after that emergency is over, let's go back and fix everything so that there's a complete production. Okay, I don't find that in the record. I find that it's not, you seem to come to an agreement of some sort about what should be done in response to the German case, and then they, instead of producing documents, they decided the best way to do this was to produce this spreadsheet. And I didn't find any, like, reservation of right. Like, all right, you're giving us that spreadsheet now, but that's not all we want. We want this thing after. Because I imagine they would have said, well, we're not producing a spreadsheet. I can't find something. So tell me in the record where it is that you said we're coming back, we want to do this now, and we're coming back for more later. So, Your Honor, if you look at 2ER, page 71, that's where I explained what I called an iterative process that had three steps. Step one was to produce an initial spreadsheet. Step two was to produce Rule 30B-6 witnesses. And step three was to produce a revised spreadsheet after the Rule 30B-6 witnesses, and we corrected the errors. And I referred to the parallel proceeding against a different party in which that process had worked very well. We never, during that process, waived our rights to complete an accurate discovery. Now, Tolis has cited about- Okay, well, things are in flux. And you may think you didn't waive any rights, but the district judge, I think is making, not the district judge, but the magistrate judge at that point is making a factual finding that, yes, there were some exchanges here that you got these spreadsheets lickety-split, and that's what you're going to get. You made fails, worked very hard to produce these things. And I think you may have possible support for your position, but I don't think it's so clear that the district court can't make a decision  Your Honor, with respect- You think she's not making a factual finding, but it looked to me like she was. Well, she didn't say she was making a factual finding. What she said was there was an agreement to waive discovery. The district court made clear that- Well, when she says there's a reason, when she says there is an agreement to waive discovery, she's saying, I find, as a matter of fact, there's an agreement to waive discovery. She doesn't have to use those words, does she? Well, I think in some respects she does, Your Honor, because if you look at the record, right, the agreement was to this three-step iterative process. And step three never happened. We never got to the point where Tullis corrected the spreadsheets based on what we found out in the 30B6 depositions. So you can look at the plain words of the transcript and see what we agreed to. And in those plain words, we didn't agree that we'll just take the spreadsheet and nothing else. We said number one spreadsheet, number two depositions, number three- You did get a revised spreadsheet. We did eventually down the road, but the revised spreadsheet was still riddled with errors. The spreadsheets didn't add up. As we explained in the briefs, there was over $200 million in discrepancies from the initial spreadsheet and the revised spreadsheets that were never explained. We had customers of Tullis, like Air France, that are major, major customers for which there were no sales reflected at all. We had a number of- Can I go back to my first question? Yeah. When was it explained that there was no longer any emergency? There were subsequent hearings with the magistrate judge that I don't believe either party cited in detail in their briefs. But in those hearings, there was an explanation at all times of what was going on in the other proceedings. I want to make one thing very clear, Your Honor. What we had envisioned in that first hearing was the production and immediate Rule 30B6 depositions. That didn't happen. We got spreadsheets. We didn't have Rule 30B6 depositions until months later in December and January after the parties had carefully negotiated eight topics for the 30B6 depositions. So this emergency process evolved into a non-emergent process, and that's very clear from the record. That's what happened. The only thing that happened in this emergency way was the very initial production of spreadsheets, which, as I said, were wholly defective and inadequate. There was some revision of it months later, but not a sufficient revision. And there's no evidence anywhere, not a single word, that Tolis has been able to cite or, for that matter, the district court or the magistrate judge cited where we expressly said we waived our rights to complete discovery. Likewise, there's nothing in the record that says, oh, we'll take these spreadsheets now, but we reserve our right to make other discovery claims. Well, it's not other discovery claims. We did agree. We'll take these now, but we then want to reinstate our original discovery request. Yeah, but that's not exactly what happened either, Your Honor. I'm saying, of course you wouldn't say that, so what did you say? Right. What we said was there were these three steps, right, and step three never happened. The revision step after the 30B6 depositions never happened. I thought the depositions broke down, that you had some, they were trying to explain mostly these spreadsheets. They explained some, some talked to your satisfaction, you got some supplemental answers, and then the rest of the depositions were never scheduled. They refused to schedule any other depositions. Well, I guess who refused who is another matter, another factual determination. It's not a factual determination, Your Honor. There's no question that Hollis doesn't dispute this. Hollis doesn't dispute that these three depositions happened and they refused to produce other deponents. We wrote letter after letter saying these depositions weren't sufficient and we needed other deponents, and they refused to do that. That's in the record. Okay, so they feel that on the topics that they produced deponents on, that they had covered those topics, and then there were other topics, and depositions weren't scheduled on those topics. Right. Hollis never provided us witnesses on those topics, and on the topics that were scheduled, these witnesses were just not prepared. Well, you know, here's what I like. I see, like, a whole set of litigation taking place on a record that we don't have in front of us to some degree, and so let's just take the issue of the witnesses. My understanding of your argument on appeal is that these 30B6 witnesses were not the appropriately designated because they couldn't testify to the scope of things that you wanted. But now you're telling us that they should have scheduled additional 30B6 witnesses, but I'm not seeing that in the magistrate or the district judge's orders that that was in front of the court. But now you're arguing to us, so tell me where in those orders the court made an error on that point. The court simply didn't address it, but we raised that in the motion to compel. We said that Hollis never designated witnesses on several of the topics, and the magistrate judge just ignored that, as did the district judge. I mean, this is a clear error of law. I mean, there's no dispute that if you agree to topics, you have to produce witnesses, and Hollis simply refused to do so.  Yes, Your Honor. Yes, Your Honor. And it's an error of law because the legal standard is clear and plainly wasn't applied here. These witnesses have to be educated by looking at company documents, talking to other employees, and if necessary, talking to available former company employees, and they didn't do any of that. They didn't do any of that. Mr. Acevedo, who testified on the spreadsheets, hadn't even looked at some of them before he testified. There was an issue of how long these things had taken place quite a time in the past, and there weren't, apparently for a lot of it, there weren't any documents. And when certain things were identified, they went back and looked, and there were no people to talk to on those topics. I understand that you wanted them to know this at the time of the depositions, but if they didn't, I'm not sure why the district judge wasn't allowed to say that deposition was sufficient because at the time you asked them that question, they didn't have the answer because those people didn't have the answers, the ones that you said they were supposed to talk to. So Ms. Ware admitted that there were a number of people at the company she could have talked to and hadn't talked to. But then she went back and talked to them and found out they didn't know anything. Isn't that what happened? She talked to two people. There was a former employee, Mr. McLaughlin, who plainly had relevant information that she never went back and talked to. Mr. Acevedo had a colleague who had prepared some of the spreadsheets, and we had, by the way, asked to depose that colleague when she was still an employee of TALUS. They refused. He never went back and talked to that person. But you're wrong in saying the magistrate judge didn't address this. Maybe she did say that she found that your argument is that they were unprepared on all eight topics, so it's justified compelling additional testimony. Some of the things were moat and time, failed starge documents electronically. They produced declarations after the depositions, relaying information from inquiries made with other employees. And she is still saying that they were prepared on short notice. They weren't prepared on short notice, Your Honor. All right. So you disagree with the judge's conclusion there that they were prepared on short notice. Well, then, you agree there was short notice. You disagree that they were prepared, right? No, both. But they weren't. These depositions happened months after that initial hearing, and over six weeks after we agreed to the topics. This wasn't the short notice deposition we were contemplating back in August, where they'd only have a couple of days to prepare. They had, in some cases, two and a half months to prepare for these depositions at minimum. So they weren't on short notice. They weren't prepared. They knew next to nothing about the topics that we were asking about. So you disagree with the judge's conclusions that the notice was short? Well, yes, because you look at a calendar, and four months is not short notice. The difference between when we said we wanted these witnesses and when we actually had witnesses provided. Your time has expired, but I'll give you a few minutes for rebuttal. Thank you, Your Honor. We'll hear from Taliesin. Thank you, Your Honor, and may it please the Court. John Lomas with Evershed Sutherland on behalf of Apelli Taliesin Avionics. In this appeal, Lufthansa raises the sort of garden-variety complaints about discovery responses that are rejected every day in the district courts by judges exercising the broad discretion they have to resolve discovery disputes. Lufthansa's complaints were properly rejected twice below. First, by the magistrate judge, after she conducted 12 hearings and status conferences, read through a 60-page joint submission detailing the party's discovery dispute, reviewed four attorney declarations and 30 exhibits, including the full deposition transcripts of some of the witnesses that counsel was just talking about, and spent more than two hours thoroughly discussing with party's counsel during that last hearing the specific requests and topics and history of this, or the information that was being requested and why they needed it, why Lufthansa was claiming they needed it. And she ruled based on, as Your Honors have noted, she found factual, she made factual determinations based on that record, that extensive record, reviewing the deposition transcript and applying the standard that is required, which is Federal Rule 26b-1. The standard is a balancing act standard between what is the need for the discovery requested versus the burden to the party, the producing party, based on all the circumstances, the nature of the case, where the information is located, the scope of the information, the importance to the need of the case, and so on. And that's a highly sensitive factual inquiry, right? And that's why the standard of review in discovery cases is, of course, abusive discretion, because fundamentally resolving discovery disputes is a fact-intensive inquiry. And the standard is just that, a balancing act. And the district court referred to that, as Your Honors even mentioned, with respect to the circumstances with where the information is located, the multiple databases, the long history of the time frame here and how far back it went, the fact that several of the individuals that might have been involved had left the company. And, of course, though, it was within her discretion to make the decision based on those findings that she properly found. I want to ask the same question I started with. I understand things were very rushed at the beginning, but it seemed like something changed, and yet the judge says all these depositions all happened on short notice. So can you clarify what's going on there? Well, Your Honor, I mean, back in the original hearing, it was Lufthansa's counsel who was, of course, making the argument that everything was on an urgent basis and needed to be done for the September hearing in Germany. But then not only that, representations were made that the information had to be provided in the U.K. and French proceedings within a month or so after that. And so, yes, I mean, that was the demand. That was what was being argued to the court on why they were pressing for this discovery and what they were demanding TALIS to do in terms of providing this information. And then at one point, I think there's a mention of they didn't want to have 10,000 documents to have to go through. And so that's why there was a proposal to have the spreadsheet, and TALIS worked on that spreadsheet and went through and pulled the data from multiple databases and did this iterative process to provide the information that was requested. So in terms of the passage of time, I mean, apparently Lufthansa's cases had changed and they potentially had more time to support, or maybe that they were overstating the need at the very beginning when they were pressing for an immediate response from TALIS on some of this discovery and talking about how important it was for their case. And in fact, once TALIS provided the spreadsheets and the initial depositions, the three depositions and the multiple declarations, Lufthansa argues that TALIS refused additional depositions, but I mean, they were on the back burner, both parties had put them on the back burner. Lufthansa demonstrated a lack of motivation to press forward with those until almost a year later after this thing started. So it's unclear why they were demanding such urgency at the beginning and demanded TALIS to go through all these hoops to provide all this information and then kept coming back to them and following up on this the first few months and then just with the promise that this would satisfy what they were looking for and only to come back a year later and then demand everything that they had requested in the beginning. Did you provide deponents on each of the topics? No, there were two topics, I believe, that were never scheduled and those were not because they were not requested to be scheduled on the urgent basis like the others. And they let those sit. And then when they came back and asked for those in the briefing for the district court, I mean, again, the district court looked at that request, did what it was supposed to do by looking at the information that was requested, what was the need for that discovery and balanced it against the additional burden. I mean, back in the original hearing in August, the counsel for Lufthansa argued that it only needed a very brief deposition. It described the deposition that it had in the other proceeding as being the same person, no more than a full day. I think it was two depositions of the same person, the total amount less than a full day. TALOS provided three witnesses on three different days, many more hours than a single day total, hundreds of pages of deposition transcript that they had obtained. And frankly, the argument, too, about the preparation, you know, Lufthansa attacks the preparation, but they don't explain what questions didn't get answered and what information they need and why that information is important and relevant to their case and why it deserves additional burden. On that point, I wanted to ask you because in some cases a witness wasn't familiar, for example, with the spreadsheet or the underlying data that put the spreadsheet together. And then later on, I think at least two witnesses, there was like a supplemental declaration to provide more information. But often, you know, it's been suggested that a 30B6 deposition is different than, say, a declaration because you don't have the examination option. After the, I guess I'll call them supplemental declarations were provided, did Lufthansa then ever come back and say, but now we want another 30B6 deposition of that witness or a continuation of a 30B6 with such and such a witness? Ultimately, they came back and, yes, demanded additional deposition right in the form of the discovery dispute. And then it was at that point that it had already been, you know, several months of this process of where TALIS was responding to these demands and providing Lufthansa with the information it was requesting, Lufthansa taking it, going forward, and then coming back and asking for, demanding more, TALIS coming, providing it, giving another deposition, and kept taking these steps. And it was seemingly, there was seemingly no end, right? And then at the end, Lufthansa turns around and demands everything under the sun, even though it was clear at the beginning that the magistrate judge told the parties there was going to be no all or nothing result here, that the parties had to come up with a compromise. And that's when Lufthansa posed this idea of putting all the sales information and purchase information and pulling, creating these spreadsheets that weren't even kept in the ordinary course. And so TALIS went out of its way to do work essentially for Lufthansa, right? These documents, to provide them the information that they wanted in a nice, neat package, as opposed to the tens of thousands of documents that Lufthansa's counsel said he didn't want at the beginning of this. I don't know that I got the, I heard the answer to the judge's question. After the depositions were taken of those three parties, and in Lufthansa's view, or wanting, affidavits were put in, and then was there a request to redepose those people? No, there was a request for the additional deposition testimony. Well, part of the last, at the very end, was an additional request for deposition testimony. I don't know that it was necessarily a redeposition of those individuals, as opposed to just a general request for. Well, then, I mean, I think I heard Mr. Rosenberg say that, in his view, there was a pending deposition request, and I don't know of which witnesses or just a type of witness, that was left hanging, that was not addressed by either the magistrate judge or the district court. Well, there were two topics that the parties discussed at length during the hearing on the motion to compel, and those were topics that, you know, Lufthansa didn't initially, it didn't push for a deposition, right? And they were sort of put on the back burner, and then the parties moved forward as is, and then they came back and demanded those depositions along with everything, all the other documents that they had demanded. And what was your response to the demand for specific depositions? Well, that was part of our, so our response, it was a comprehensive response of, look, we've been providing all these documents, we've been providing. Well, because of the cut to the chase, did you decline to offer any more deponents? Well, right, yes, because as part of the comprehensive response, yes, because it was in the argument, and the position we took was we needed an end, and there was no end in sight because they just kept coming back for more. What I'm gathering is that all of this occurred in the submissions to the magistrate judge about the discovery disputes, that there was no motion, additional motion made that was denied. Is that right? That's correct. In fact, it was the motion to compel at the very end, yes, the joint submission that the parties had to do under the local rules for the discovery disputes. That's correct, yes. Let me ask you this. Your opponent states that there was a three-stage approach that was contemplated and agreed on. Do you agree with that? A three-stage approach? Yes. No, I don't think it was necessarily agreed that it was going to be a three-stage approach. The contemplation was we would provide the spreadsheets, there would be a deposition to explain them, and there was a brief, and the characterization of the deposition at the beginning, when it was raised, would be just a brief deposition to explain the spreadsheets at the original April hearing, or excuse me, August hearing, to kick this off. And so that was the understanding, that there would be this brief deposition to explain the spreadsheets that were provided. But what occurred was in the initial provision of the spreadsheet, you know, to try to get the information as quickly as possible, TALIS produced, you know, what it could and pulled it together, and it was actually more information, I guess, than what was, you know, wanted, or at least more information than in the format that they wanted. So then TALIS went back and looked at the specific part numbers for the Astronex product and helped redo another spreadsheet for Lufthansa based on its requests. So it ultimately ended up being an iterative process because TALIS actually went ahead and responded to the request for additional spreadsheets by pulling them together again and providing them based on the Astronex parts. So again, ultimately, this comes back to what is the relevant standard for discovery disputes or discovery issues is the balancing act between what is being asked for, the relevance, the need for the case versus the burden, which considers all of the circumstances, the timeline of the case, the ongoing demands, the meet and confer process, the representations, and sort of the inducement to TALIS to act quickly and do all this work only for at the end to realize that Lufthansa is going to ask for everything again anyway. And those type of issues are all very, very fact intensive, as are the issues of preparation of witnesses. And just going back to that one witness, Richard Marzacco, for instance, as the example, you know, Lufthansa points to one question or one issue, a question about the joint advertising. That's the one question where they say that this witness didn't ask his counterpart in Europe. But the witness testified that he spoke with the witness or the counterpart in Europe for over an hour. He testified that he prepared for the deposition for 10 hours. He testified he had a 13-year working relationship with this individual and knew very well what was going on. The fact that he had no understanding of any joint advertising is clear in the record because they don't do any joint advertising with their part suppliers. That's just not the way this works. And that was clear throughout his testimony, over 150 to 200 pages of testimony that he provided on this topic. And that's the one question that they point to is saying that he was unprepared. So given these factual issues are within the sound discretion of the court and there's no basis to find that the court, any of these decisions were clearly erroneous, we request that the court affirm. Thank you, Counsel. We'll put three minutes on rebuttal. Thank you, Your Honor. I have a few points. First of all, on the question of the iterative process, counsel agreed there was an iterative process, but the key to the iterative process was to be able to do revised spreadsheets after the Rule 30b-6 deposition. So was your citation to ER-71 for the iterative process? Yeah, it was. I don't see a third part of that on ER-71. The part was it says, and we got revised spreadsheets after the deposition. It says you got a revised spreadsheet. That was very helpful. Right. That's what we were asking for here. Initial spreadsheet, 30b-6 depositions, and then revised spreadsheet after the deposition. And you got that. That was the process we were talking about. You never got a revised spreadsheet after the 30b-6 depositions, and quite frankly, Your Honor, Mr. Acevedo, the witness on the spreadsheets, was unable to testify as to critical elements of many of the spreadsheets, and that is a huge problem. And I want to address the burden question very briefly. There was very little burden on TALUS to revise the spreadsheets. All they would have to do is put in different parameters and filters and rerun them. For example, by including additional part numbers that we had pointed out to TALUS were not searched. And Mr. Acevedo admitted he didn't do those searches, that there were other searches he could have done. He admitted that he didn't quality check any of the spreadsheets against hard copy documents. This is the kind of thing that in the other case had happened and that we were envisioning when we looked at the iterative process. Secondly, Your Honors, on the depositions, we absolutely repeatedly asked for depositions on the topics where there was no production of a witness and to have re-depositions on the 30b-6 topics after the original depositions. Could I ask a practical question? I'm looking like the magistrate's order and the urgency in July of 2019. Then you go to 2021 and you get a district court order, or 20, then you file your brief in 2021. So a few years have gone by and all this was sort of kicked off by what's referred to as the Mannheim litigation. As a matter of public record, is that litigation still pending with respect to the damages? Yes, it is. It is still pending and additional information can be submitted in Germany, in France, and in the UK. The foreign countries are different from us. You can actually submit additional evidence of damages even on appeal, but the damages proceeding in Mannheim is still ongoing, even in the district court. So yes, it is still absolutely relevant. I don't know if you have other questions. I see my time is almost up. I want to make one conclusion, which is we've argued, and I think our briefs do this pretty well, that these are all legal issues because the legal standard that applies to all of them was simply not considered by the magistrate judge and by the district judge. At minimum, they're mixed questions of fact and law. We've cited numerous cases in our brief, the Bank of America case, etc., where these mixed questions are reviewed de novo. And I'd just like to read a sentence from the Supreme Court's decision in Bank of America saying that you only apply clear error review to mixed questions, where the questions immerse courts in case-specific factual issues, compelling them to marshal and weigh evidence, make credibility judgments, and otherwise address what we have emphatically, if a tad redundantly, called multifarious, fleeting, special, narrow facts that utterly resist generalizations. That is not the case. That was a foreign discovery case? No, it was a few. That was not a case of discovery in aid of a foreign proceeding, correct? No, but the standard is the same, Your Honor, as this court held in Hussein. Thank you. And the Seventh Circuit held in Jerez. Okay. Thank you, Your Honor. Yeah, thank you both for your arguments this morning. The case just argued will be submitted for decision and will proceed.
judges: THOMAS, McKEOWN, Restani